## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## NEWNAN DIVISION

IN RE                                           :
                                                :
LONA DEMETRIA CAROLYNN BIBBS-  :        CHAPTER 7 CASE NO.
WALKER,                                        :        20-11214-pmb
      Debtor.                            :
_____

LIVE OAK BANKING COMPANY,        :
                                                :
      Plaintiff,                          :        ADVERSARY PROCEEDING NO.
                                                :
VS.                                             :
                                                :        _____
LONA DEMETRIA CAROLYNN BIBBS-  :
WALKER,                                        :
                                                :
      Defendant.                        :

## COMPLAINT FOR DETERMINATION OF DISCHARGEABILITY AND OBJECTING TO DEBTOR'S DISCHARGE PURSUANT TO SECTIONS 523 AND 727 OF THE BANKRUPTCY CODE

COMES NOW Live Oak Banking Company ("Plaintiff) as and for its Complaint against Lona Demetria Carolynn Bibbs-Walker (the "Debtor"), respectfully alleges:

## __JURISDICTION__

1.      On August 31, 2020, the Debtor filed a voluntary petition (the "Petition") for relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of Georgia.

2.      On September 15, 2020, the case was converted to a case under chapter 7 of the Bankruptcy Code.

3.      James G. Baker was appointed as interim trustee.

4.      On January 26, 2006, of Title 11 of the Bankruptcy Code.

5.      This Complaint is timely because the date by which a Complaint objecting to dischargeability of a particular debt or to the Debtor's discharge expires on March 31, 2021 (Doc. No. 59).

6.      This is an adversary proceeding in which the plaintiff-creditor is seeking a determination as to the dischargeability of the debt owed by the Debtor to plaintiff under Bankruptcy Code § 523(a)(6), and in the alternative, is objecting to the Debtor's discharge under Bankruptcy Code § § 727(a)(3) and 727(a)(4)(A).

7.      The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334 and Bankruptcy Code § § 523 and 727.

8.      This case is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) and 157(b)(2)(J).

## PARTIES

9.      Plaintiff is a banking corporation organized under the laws of the State of North Carolina, is authorized to do business in the State of Georgia, and maintains its principal office at 1741 Tiburon Drive, Wilmington, NC 28403.

10.     Plaintiff is a creditor of the Debtor.

11.     Defendant is the Debtor in the above-captioned case and at all relevant times has resided at 193 Stanley Road, Fayetteville, GA 30214.

## BACKGROUND

12.     Debtor is a dentist and is the managing member of My Kidz Dentist, LLC, a Georgia Limited Liability Company ("My Kidz Dentist").

13.     My Kidz Dentist is a debtor in chapter 7 case no. 19-125-6-pmb, United States Bankruptcy Court for the Northern District of Georgia, Newnan Division.

14.     On or about November 17, 2010, My Kidz Dentist executed and delivered to Plaintiff a
Note in the original principal amount of $820,000.00, plus interest at the rate of WSJ
Prime plus 2% per annum to be paid over one-hundred twenty (120) months (the "Note").
A copy of the Note dated November 17, 2010 is attached as Exhibit A and incorporated
herein by reference.

15.     To secure the payment of the Note, the Principal entered into a Security Agreement dated
November 17, 2010, which granted Plaintiff a lien in certain personal property of the
Principal, to-wit, Equipment, Inventory, Accounts, Instruments, Chattel Paper, General
Intangibles, Documents, and Deposit Accounts, evidenced by UCC Financing Statement
filed 11/15/2010, Initial Financing Statement File No. 038-2010-006425, as amended by
Amendment filed 06/26/2013, and by Continuation Statement filed 10/05/2015, Coweta
County Superior Court (the "Property"). The Security Agreement and UCC Financing
Statements as amended and continued are attached as Exhibit B and incorporated herein
by reference.

16.     Among other things, the Security Agreement and UCC Financing Statements, as
amended and continued, cover not only the specifically enumerated Equipment,
Inventory, Accounts, Instruments, Chattel Paper, General Intangibles, Documents, and
Deposit Accounts, then-owned or thereafter acquired, but also all replacements,
accessions, proceeds, and products thereto.

17.     On or about November 17, 2010, in connection with the loan to My Kidz Dentist, Debtor
entered an Unconditional Guarantee of the My Kidz Dentist's obligation to Plaintiff. The
Unconditional Guarantee is attached as Exhibit C and incorporated herein by reference.

18.    As of September 8, 2020, the outstanding indebtedness of the obligation owed to Plaintiff
was approximately $143,347.14.

19.    Immediately prior to April 6, 2020, the Property was located at the premises of My Kidz
Dentist, at 1741 Newnan Crossing Boulevard E., Suite I, Newnan, GA 30265-6600 (the
"Premises").

20.    On or about April 6, 2020, the Premises were damaged by flooding.

21.    Following the flood damage to the Premises, the Property was no longer located at the
Premises.

22.    On or about January 29, 2020, Debtor's mother, Lona Bibbs, formed Dental Home 4
Kidz Partnership, LLC, a Georgia Limited Liability Company ("DH4K").

23.    Since August 2020, Debtor has continued to practice dentistry as the clinical director and
the clinical instructor of DH4K.

24.    On or about February 13, 2020, Debtor's mother, Lona Bibbs, formed Dental Institute of
Georgia, LLC, a Georgia Limited Liability Company ("Dental Institute").

25.    Upon information and belief, Dental Institute, is the lessee of space located at 155
Carnegie Place, # 201, Fayetteville, GA 30214.

26.    Upon information and belief, DH4K subleases business space from Dental Institute.

27.    Upon information and belief, the premises at 155 Carnegie Pl #201, Fayetteville, GA
30214 is the former business location of My Kidz Dentist of Fayetteville, LLC, also a
debtor in chapter 7 case no. 19-12508-pwb, United States Bankruptcy Court for the
Northern District of Georgia, Newnan Division.

28.    At her Bankruptcy Rule 2004 examination, Debtor failed to explain or account for the
disappearance of most of the Property from the Premises.

29.    Based upon the testimony of the Debtor at her Bankruptcy Rule 2004 examination and

other evidence, Plaintiff has cause to believe that Debtor or Debtor's agent(s) at Debtor's

direction removed Plaintiff's Property from the business premises of My Kidz Dentist,

and relocated the Property to the premises of DH4K and/or Dental Institute.

30.    Debtor has willfully and maliciously deprived Plaintiff of the lawful possession and

control of the Property that secures its loan.

### COUNT I - NON-DISCHARGEABILITY OF INDEBTEDNESS UNDER SECTION 523(a)(6) OF THE BANKRUPTCY CODE

31.    Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 30 of this

Complaint as if set forth at length herein.

32.    Bankruptcy Code § 523(a)(6) provides, in relevant part, that:

> (a)    A discharge under section 727, 1141, 1228(a), 1228(b) or
> 1328(b) of this title does not discharge an individual debtor from any
> debt--
>
> (6)  for willful and malicious injury by the debtor to another entity
> or to the property of another entity . . . .

33.    Debtor or Debtor's agent, at Debtor's direction, has removed Plaintiff's Property from the

Premises and has failed and refused to disclose to Plaintiff the whereabouts of the

Property.

34.    All or part of the debt owed to Plaintiff is non-dischargeable due to Debtor's willful and

malicious injury to Plaintiff's Property within the meaning of Bankruptcy Code §

523(a)(6).

## COUNT II - OBJECTION TO DEBTOR'S DISCHARGE
## UNDER SECTION 727(a)(3) OF THE BANKRUPTCY CODE

35.     Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 34 of this

Complaint as if set forth at length herein.

36.     Bankruptcy Code § 727(a)(3) provides that:

        (a)        The court shall grant the debtor a discharge, unless

    . . .

        (3) the debtor has concealed, destroyed, mutilated, falsified, or
failed to keep or preserve any recorded information, including books,
documents, records, and papers, from which the debtor's financial
condition or business transactions might be ascertained, unless such act
or failure to act was justified under all of the circumstances of the case;

37.     The Debtor, as the managing member of  My Kidz Dentist, concealed, destroyed,

mutilated, falsified, or failed to keep or preserve any recorded information, including

books, documents, records, and papers, from which the Debtor's financial condition or

business transactions might be ascertained, and specifically the whereabouts of Plaintiff's

Property.

38.     By virtue of the foregoing, the Debtor's discharge should be denied under Bankruptcy

Code § 727(a)(3).

## COUNT III - OBJECTION TO DEBTOR'S DISCHARGE UNDER
## SECTION 727(a)(4)(A) OF THE BANKRUPTCY CODE

39.     Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 38 of this

Complaint as if set forth at length herein.

40.     Bankruptcy Code § 727(a)(4)(A) provides that:

        (a)        The court shall grant the debtor a discharge, unless –

> (4)    the debtor knowingly and fraudulently, in or in connection with the case –
>
>   (A) made a false oath or account….

41.    The Debtor knowingly and fraudulently, in or in connection with the case, made a false oath or account, when she testified under oath that she did not know the whereabouts of Plaintiff's Property.

42.    By virtue of the Debtor's false representations and omissions, and the oath she took in her Bankruptcy Rule 2004 examination, the Debtor's discharge should be denied under Bankruptcy Code § 727(a)(4)(A).

WHEREFORE, plaintiff respectfully requests that this Court enter a Judgment determining that the indebtedness owed to Plaintiff by virtue of Debtor's Unconditional Guarantee, is non-dischargeable under Bankruptcy Code § 523(a)6) or, in the alternative, denying the Debtor's discharge under Bankruptcy Code § § 727(a)(3) and 727(a)(4)(A), and granting plaintiff such other and further relief as this Court may deem just and proper.

    Respectfully Submitted,
/s/ Mark A. Baker_____
Mark A. Baker (GBN # 033840)
*Counsel for Movant*
MCMICHAEL TAYLOR GRAY, LLC
3550 Engineering Drive, Suite 260
Atlanta, GA 30092
Telephone: (404) 474-7149
Facsimile: (404) 745-8121

# EXHIBIT A



**U.S. Small Business Administration**

# NOTE

| SBA Loan # | ▓▓▓▓▓▓▓▓▓ |
|---|---|
| SBA Loan Name | My Kidz Dentist PC |
| Date | November 17ᵗʰ, 2010 |
| Loan Amount | $820,000.00 |
| Interest Rate | Wall Street Journal Prime Rate plus 2.00% |
| Borrower | MY KIDZ DENTIST PC |
| Operating Company | N/A |
| Lender | LIVE OAK BANKING COMPANY |

1.   PROMISE TO PAY:

In return for the Loan, Borrower promises to pay to the order of Lender the amount of EIGHT HUNDRED TWENTY THOUSAND AND NO/100 DOLLARS ($820,000.00), interest on the unpaid principal balance, and all other amounts required by this Note.

2.   DEFINITIONS:

"Collateral" means any property taken as security for payment of this Note or any guarantee of this Note.

"Guarantor" means each person or entity that signs a guarantee of payment of this Note.

"Loan" means the loan evidenced by this Note.

"Loan Documents" means the documents related to this loan signed by Borrower, any Guarantor, or anyone who pledges collateral.

"SBA" means the Small Business Administration, an Agency of the United States of America.

3.    PAYMENT TERMS:

 Borrower must make all payments at the place Lender designates.  The payment terms for this Note are:

The interest rate on this Note will fluctuate.  The initial interest rate is 5.25% per year.  This initial rate is the prime rate in effect on the first business day of the month in which SBA received the loan application, plus 2.00%.  The initial interest rate must remain in effect until the first change period begins.

Borrower must pay a total of 6 payments of interest only on the disbursed principal balance beginning one month from the month this Note is dated and every month thereafter; payments must be made on the fifth calendar day in the months they are due.

Borrower must pay principal and interest payments of $9,150.63 every month, beginning seven months from the month this Note is dated; payments must be made on the fifth calendar day in the months they are due.

Lender will apply each installment payment first to pay interest accrued to the day Lender receives the payment, then to bring principal current, then to pay any late fees, and will apply any remaining balance to reduce principal.

The interest rate will be adjusted every calendar quarter (the "change period").

The "Prime Rate" is the prime rate in effect on the first business day of the month (as published in the Wall Street Journal) in which SBA received the application, or any interest rate change occurs.  Base Rates will be rounded to two decimal places with .004 being rounded down and .005 being rounded up.

The adjusted interest rate will be 2.00% above the Prime Rate.  Lender will adjust the interest rate on the first calendar day of each change period.  The change in interest rate is effective on that day whether or not Lender gives Borrower notice of the change.

Lender must adjust the payment amount at least annually as needed to amortize principal over the remaining term of the note.

If SBA purchases the guaranteed portion of the unpaid principal balance, the interest rate becomes fixed at the rate in effect at the time of the earliest uncured payment default.  If there is no uncured payment default, the rate becomes fixed at the rate in effect at the time of purchase.

**Loan Prepayment:**

Notwithstanding any provision in this Note to the contrary:

**Borrower may prepay this Note.** Borrower may prepay 20% or less of the unpaid principal balance at any time without notice.  If Borrower prepays more than 20% and the Loan has been sold on the secondary market, Borrower must:
a.      Give Lender written notice;
b.      Pay all accrued interest; and
c.      If the prepayment is received less than 21 days from the date Lender receives the notice, pay an
        amount equal to 21 days' interest from the date lender receives the notice, less any interest accrued during
        the 21 days and paid under subparagraph b., above.

If Borrower does not prepay within 30 days from the date Lender receives the notice, Borrower must give Lender a new notice.

All remaining principal and accrued interest is due and payable 10 years from date of Note.

**Late Charge:**  If a payment on this Note is more than 10 days late, Lender may charge Borrower a late fee of up to 5.00% of the unpaid portion of the regularly scheduled payment.

4.      DEFAULT:

Borrower is in default under this Note if Borrower does not make a payment when due under this Note, or if Borrower or Operating Company:

A.      Fails to do anything required by this Note and other Loan Documents;
B.      Defaults on any other loan with Lender;
C.      Does not preserve, or account to Lender's satisfaction for, any of the Collateral or its proceeds;
D.      Does not disclose, or anyone acting on their behalf does not disclose, any material fact to Lender or SBA;
E.      Makes, or anyone acting on their behalf makes, a materially false or misleading representation to Lender or SBA;
F.      Defaults on any loan or agreement with another creditor, if Lender believes the default may materially affect Borrower's ability to pay this Note.
G.      Fails to pay any taxes when due;
H.      Becomes the subject of a proceeding under any bankruptcy or insolvency law;
I.      Has a receiver or liquidator appointed for any part of their business or property;
J.      Makes an assignment for the benefit of creditors;
K.      Has any adverse change in financial condition or business operation that Lender believes may materially affect Borrower's ability to pay this Note;
L.      Reorganizes, merges, consolidates, or otherwise changes ownership or business structure without Lender's prior written consent; or
M.      Becomes the subject of a civil or criminal action that Lender believes may materially affect Borrower's ability to pay this Note.

5.      LENDER'S RIGHTS IF THERE IS A DEFAULT:

Without notice or demand and without giving up any of its rights, Lender may:

A.      Require immediate payment of all amounts owing under this Note;
B.      Collect all amounts owing from any Borrower or Guarantor;
C.      File suit and obtain judgment;
D.      Take possession of any Collateral; or
E.      Sell, lease, or otherwise dispose of, any Collateral at public or private sale, with or without advertisement.

6.      LENDER'S GENERAL POWERS:

Without notice and without Borrower's consent, Lender may:

A.      Bid on or buy the Collateral at its sale or the sale of another lienholder, at any price it chooses;
B.      Incur expenses to collect amounts due under this Note, enforce the terms of this Note or any other Loan Document, and preserve or dispose of the Collateral.  Among other things, the expenses may include payments for property taxes, prior liens, insurance, appraisals, environmental remediation costs, and reasonable attorney's fees and costs.  If Lender incurs such expenses, it may demand immediate repayment from Borrower or add the expenses to the principal balance;
C.      Release anyone obligated to pay this Note;
D.      Compromise, release, renew, extend or substitute any of the Collateral; and
E.      Take any action necessary to protect the Collateral or collect amounts owing on this Note.

7.   **WHEN FEDERAL LAW APPLIES:**

When SBA is the holder, this Note will be interpreted and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Note, Borrower may not claim or assert against SBA any local or state law to deny any obligation, defeat any claim of SBA, or preempt federal law.

8.   **SUCCESSORS AND ASSIGNS:**

Under this Note, Borrower and Operating Company include the successors of each, and Lender includes its successors and assigns.

9.   **GENERAL PROVISIONS:**

A.   All individuals and entities signing this Note are jointly and severally liable.

B.   Borrower waives all suretyship defenses.

C.   Borrower must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.

D.   Lender may exercise any of its rights separately or together, as many times and in any order it chooses. Lender may delay or forgo enforcing any of its rights without giving up any of them.

E.   Borrower may not use an oral statement of Lender or SBA to contradict or alter the written terms of this Note.

F.   If any part of this Note is unenforceable, all other parts remain in effect.

G.   To the extent allowed by law, Borrower waives all demands and notices in connection with this Note, including presentment, demand, protest, and notice of dishonor. Borrower also waives any defenses based upon any claim that Lender did not obtain any guarantee; did not obtain, perfect, or maintain a lien upon Collateral; impaired Collateral; or did not obtain the fair market value of Collateral at a sale.

10.    STATE-SPECIFIC PROVISIONS:

Time is of the essence of this Note.

11.     BORROWER'S NAME(S) AND SIGNATURE(S):

    By signing below, each individual or entity becomes obligated under this Note as Borrower.

IN WITNESS WHEREOF, LONA BIBBS, President of MY KIDZ DENTIST, PC, has executed this Note this _____ day of November, 2010.

                                                 BORROWER:

                                               MY KIDZ DENTIST, PC
                                               A Georgia Professional Corporation

                                               BY: _____ (L.S.)
                                                    LONA BIBBS

                                             TITLE:  President

                                               [CORPORATE SEAL]

# EXHIBIT B



U.S. Small Business Administration

## SECURITY AGREEMENT

| SBA Loan # | ████████████ |
|---|---|
| SBA Loan Name | MY KIDZ DENTIST PC |
| Debtor *(Exact full legal name of individual(s), corporation, LLC, partnership, or other organization)* | MY KIDZ DENTIST, PC |
| Borrower | MY KIDZ DENTIST, PC |
| Secured Party | LIVE OAK BANKING COMPANY |
| Date | NOVEMBER 7ᵗʰ, 2010 |
| Note Amount | $820,000.00 |

## 1. DEFINITIONS.

Unless otherwise specified, all terms used in this Agreement will have the meanings ascribed to them under the Official Text of the Uniform Commercial Code, as it may be amended from time to time, ("UCC").  "SBA" means the Small Business Administration, an Agency of the U.S. Government.

## 2. GRANT OF SECURITY INTEREST.

For value received, the Debtor grants to the Secured Party a security interest in the property described below in paragraph 4 (the "Collateral").

## 3. OBLIGATIONS SECURED.

This Agreement secures the payment and performance of: (a) all obligations under a Note dated of even date, made by MY KIDZ DENTIST, PC, made payable to LIVE OAK BANKING COMPANY, in the amount of EIGHT HUNDRED TWENTY

---

**SBA Form 1059 (2-04) Previous Editions are obsolete.**          **Page 1 of 5**

THOUSAND AND NO/100 DOLLARS ($820,000.00) ("Note"), including all costs and expenses (including reasonable attorney's fees), incurred by Secured Party in the disbursement, administration and collection of the loan evidenced by the Note; (b) all costs and expenses (including reasonable attorney's fees), incurred by Secured Party in the protection, maintenance and enforcement of the security interest hereby granted; (c) all obligations of the Debtor in any other agreement relating to the Note; and (d) any modifications, renewals, refinancings, or extensions of the foregoing obligations.

The Note and all other obligations secured hereby are collectively called the "Obligations."

## 4. COLLATERAL DESCRIPTION.

The Collateral in which this security interest is granted is all of the Debtor's property described below, and indicated by an "X" or other mark on the applicable line, now owned or hereafter acquired, together with all replacements, accessions, proceeds, and products.

| | |
|---|---|
| [X] a. Equipment | [X] f. Chattel paper |
| [ ] b. Fixtures | [X] g. General intangibles |
| [X] c. Inventory | [X] h. Documents |
| [X] d. Accounts | [ ] i. Farm products |
| [X] e. Instruments | [X] j. Deposit accounts |
| | [ ] k. Investment property |

[ ] l. Titled motor vehicles, including mobile or manufactured homes (list make, model, and serial #):

_____

_____

[X] m. Other:  Insert specific description of other forms of Collateral not included in categories a through k above (for example, specific commercial tort claim, letter-of-credit rights):

Including, but not limited to all property set forth in Exhibit "A".  See special stipulations in Exhibit "B" attached hereto and by this reference made a part hereof.

## 5. RESTRICTIONS ON COLLATERAL TRANSFER.

Debtor will not sell, lease, license or otherwise transfer (including by granting security interests, liens, or other encumbrances in) all or any part of the Collateral or Debtor's interest in the Collateral without Secured Party's written or electronically communicated approval, except that Debtor may sell Inventory in the ordinary course of business on customary terms.  Debtor may collect and use amounts due on accounts and other rights to payment arising or created in the ordinary course of business, until notified otherwise by Secured Party in writing or by electronic communication.

## 6.      MAINTENANCE AND LOCATION OF COLLATERAL; INSPECTION; INSURANCE.

Debtor must promptly notify Secured Party by written or electronic communication of any change in location of the Collateral, specifying the new location. Debtor hereby grants to Secured Party the right to inspect the Collateral at all reasonable times and upon reasonable notice. Debtor must: (a) maintain the Collateral in good condition; (b) pay promptly all taxes,

## 10. FEDERAL RIGHTS.

When SBA is the holder of the Note, this Agreement will be construed and enforced under federal law, including SBA regulations. Secured Party or SBA may use state or local procedures for filing papers, recording documents, giving notice, enforcing security interests or liens, and for any other purposes.  By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax or liability. As to this Agreement, Debtor may not claim or assert any local or state law against SBA to deny any obligation, defeat any claim of SBA, or preempt federal law.

## 11. GOVERNING LAW.

Unless SBA is the holder of the Note, in which case federal law will govern, Debtor and Secured Party agree that this Agreement will be governed by the laws of the jurisdiction where the Debtor is located, including the UCC as in effect in such jurisdiction and without reference to its conflicts of laws principles.

## 12. SECURED PARTY RIGHTS.

All rights conferred in this Agreement on Secured Party are in addition to those granted to it by law, and all rights are cumulative and may be exercised simultaneously. Failure of Secured Party to enforce any rights or remedies will not constitute an estoppel or waiver of Secured Party's ability to exercise such rights or remedies.  Unless otherwise required under applicable law, Secured Party is not liable for any loss or damage to Collateral in its possession or under its control, nor will such loss or damage reduce or discharge the Obligations that are due, even if Secured Party's actions or inactions caused or in any way contributed to such loss or damage.

## 13. SEVERABILITY.

If any provision of this Agreement is unenforceable, all other provisions remain in effect.

## 14. DEBTOR CERTIFICATIONS.

Debtor certifies that: (a) its Name (or Names) as stated above is correct; (b) all Collateral is owned or titled in the Debtor's name and not in the name of any other organization or individual; (c) Debtor has the legal authority to grant the security interest in the Collateral; (d) Debtor's ownership in or title to the Collateral is free of all adverse claims, liens, or security interests (unless expressly permitted by Secured Party); (e) none of the Obligations are or will be primarily for personal, family or household purposes; (f) none of the Collateral is or will be used, or has been or will be bought primarily for personal, family or household purposes; and (g) Debtor has read and understands the meaning and effect of all terms of this Agreement.

## 15. DEBTOR NAME(S) AND SIGNATURE(S).

By signing or otherwise authenticating below, each individual and each organization becomes jointly and severally obligated as a Debtor under this Agreement.

judgments, or charges of any kind levied or assessed thereon; (c) keep current all rent or mortgage payments due, if any, on premises where the Collateral is located; and (d) maintain hazard insurance on the Collateral, with an insurance company and in an amount approved by Secured Party (but in no event less than the replacement cost of that Collateral), and including such terms as Secured Party may require including a Lender's Loss Payable Clause in favor of Secured Party. Debtor hereby assigns to Secured Party any proceeds of such policies and all unearned premiums thereon and authorizes and empowers Secured Party to collect such sums and to execute and endorse in Debtor's name all proofs of loss, drafts, checks and any other documents necessary for Secured Party to obtain such payments.

## 7.  CHANGES TO DEBTOR'S LEGAL STRUCTURE, PLACE OF BUSINESS, JURISDICTION OF ORGANIZATION, OR NAME.

Debtor must notify Secured Party by written or electronic communication not less than 30 days before taking any of the following actions:  (a) changing or reorganizing the type of organization or form under which it does business; (b) moving, changing its place of business or adding a place of business; (c) changing its jurisdiction of organization; or (d) changing its name.  Debtor will pay for the preparation and filing of all documents, Secured Party deems necessary to maintain, perfect and continue the perfection of Secured Party's security interest in the event of any such change.

## 8.      PERFECTION OF SECURITY INTEREST.

Debtor consents, without further notice, to Secured Party's filing or recording of any documents necessary to perfect, continue, amend or terminate its security interest. Upon request of Secured Party, Debtor must sign or otherwise authenticate all documents that Secured Party deems necessary at any time to allow Secured Party to acquire, perfect , continue or amend its security interest in the Collateral.  Debtor will pay the filing and recording costs of any documents relating to Secured Party's security interest.  Debtor ratifies all previous filings and recordings, including financing statements and notations on certificates of title.  Debtor will cooperate with Secured Party in obtaining a Control Agreement satisfactory to Secured Party with respect to any Deposit Accounts or Investment Property, or in otherwise obtaining control or possession of that or any other Collateral.

## 9.      DEFAULT.

Debtor is in default under this Agreement if: (a) Debtor fails to pay, perform or otherwise comply with any provision of this Agreement; (b) Debtor makes any materially false representation, warranty or certification in, or in connection with, this Agreement, the Note, or any other agreement related to the Note or this Agreement; (c) another secured party or judgment creditor exercises its rights against the Collateral; or (d) an event defined as a "default" under the Obligations occurs. In the event of default and if Secured Party requests, Debtor must assemble and make available all Collateral at a place and time designated by Secured Party. Upon default and at any time thereafter, Secured Party may declare all Obligations secured hereby immediately due and payable, and, in its sole discretion, may proceed to enforce payment of same and exercise any of the rights and remedies available to a secured party by law including those available to it under Article 9 of the UCC that is in effect in the jurisdiction where Debtor or the Collateral is located.  Unless otherwise required under applicable law, Secured Party has no obligation to clean or otherwise prepare the Collateral for sale or other disposition and Debtor waives any right it may have to require Secured Party to enforce the security interest or payment or performance of the Obligations against any other person.

IN WITNESS WHEREOF, MY KIDZ DENTIST, PC by and through its President, LONA BIBBS, has executed this Security Agreement this _____ day of November, 2010.

MY KIDZ DENTIST, PC,
A Georgia Professional Corporation

BY: _____ (L.S.)
    LONA BIBBS

TITLE: President

[CORPORATE SEAL]

# EXHIBIT A

```
Date: 11/10/10                          Henry Schein Incorporated                      Page:  1
Center: ATLANTA, GA                     CUSTOMER EQUIPMENT LISTING            Requested By:  jshalt

Customer Name: Sibbs, Lona          Customer Number:              CAG Code:       Privilege Code: E04
     Address: My Kidz Dentistry PC        1741 Newnan                Customer PO
              Ste I
              Newnan, GA 30265-6600
```

| Model Number | Serial Number | Room Loc | Ins Date | Mfgr | Customer PO | Description |
|---|---|---|---|---|---|---|
| 1203877 | NA039985 | | 11/08/07 | WELCH | | AED 10 with Carry Case |
| 1709403 | 322B-715 | | 10/30/07 | PORTER | | Manifold Sys., 2 +2 Tanks |
| 2122667 | R135242 | | 10/30/07 | ROYDEN | | RO4 OPERATORS STOOL |
| 2122667 | R135243 | | 10/30/07 | ROYDEN | | RO4 OPERATORS STOOL |
| 2122667 | R135244 | | 10/30/07 | ROYDEN | | RO4 OPERATORS STOOL |
| 2122667 | R135245 | | 10/30/07 | ROYDEN | | RO4 OPERATORS STOOL |
| 2122667 | R135246 | | 10/30/07 | ROYDEN | | RO4 OPERATORS STOOL |
| 2126401 | R135239 | | 10/30/07 | ROYDEN | | RA2 Ass't Stool |
| 2126401 | R135240 | | 10/30/07 | ROYDEN | | RA2 Ass't Stool |
| 212640A | R135241 | | 10/30/07 | ROYDEN | | RA2 Ass't Stool |
| 3860770 | 07U3P90355 | | 10/30/07 | MIDMAK | | PowerMac.Single,1-3 User |
| 3869030 | V472442 | | 10/30/07 | MIDMAK | | M11 Ultraclave w/Quiet Door |
| 3934706 | 071004718077 | | 10/30/07 | CALGHT | | Hydraul.Base Mnt Chr.w/HR |
| 5533465 | 3065-2669 | | 10/30/07 | PORTER | | MXR-1 Flushmount Flowmetr |
| 5533465 | 3065-2672 | | 10/30/07 | PORTER | | MXR-1 Flushmount Flowmetr |
| 5533465 | 3065-2677 | | 10/30/07 | PORTER | | MXR-1 Flushmount Flowmetr |
| 5641590 | 07U7W510491 | | 10/30/07 | MIDMAK | | CPS Contrl Pnl,Vac/Air |
| 5642146 | 07U7WFI0204 | | 10/30/07 | MIDMAK | | Water Bypass Syst. 3/4 in |
| 5649205 | 0707PS01190 | | 10/30/07 | ROYDEN | | PowerPlr Collless Comp 3-5 |
| 6046051 | JA0J7051836 | | 11/19/07 | WELCH | | Vital Signs Monitor Bellcur |
| 6305120 | HA5M02850/TA5U02836 | | 10/30/07 | PROMA | | Ceiling Mount Dsntl Light |
| 6305120 | HA5M02850/TA5U02835 | | 10/30/07 | PROMA | | Ceiling Mount Dsntl Light |
| 6305120 | HA5M02860/TA5U02861 | | 10/30/07 | PROMA | | Ceiling Mount Dsntl Light |
| 6426204 | 070913704665 | | 10/30/07 | DCI | | ISO-C ECOMO PO SYSTM-GRAY |
| 6426204 | 070913704666 | | 10/30/07 | DCI | | ISO-C ECOMO PO SYSTM-GRAY |
| 6426204 | 070913704667 | | 10/30/07 | DCI | | ISO-C ECOMO PO SYSTM-GRAY |
| 7170000 | 40-18846G5DP | | 10/31/08 | GENDEX | | Expert DC Intraoral X-Ray |
| 7170000 | 40-18763IDP | | 10/31/08 | GENDEX | | Expert DC Intraoral X-Ray |
| OFFICE | GRCS67076 | | 10/30/07 | OFFICE | | Expert DC Intraoral X-Ray |



**ORDER RE-PRINT**

Page: 1

| Bill To: ▮▮▮ | Ship To: 01567076 | Order#: ▮▮▮ | Date: 10/31/2007 |
|---|---|---|---|
| Bibbs, Lona<br>CFD<br>113 E 9th St | Bibbs, Lona<br><br>1741 Newnan Crossing Blvd<br>Ste I | Reference#: ▮▮▮ | |
| Gibson City    IL<br>609361462 | Newnan    GA<br>302658036 | Customer PO#: ▮▮▮<br>Contact Name: | |

| Line No. | Product Code | Description | Quantity Order | Ship | S T | Unit Price | Extended Price |
|---|---|---|---|---|---|---|---|
| 1 | 3868770 | PowerVac,Single,1-3 User 2HP 208-230V | 1 EA | 1 | A | 6,605.00 | 6,605.00 |
| | | *Invoice:* 9904447-1    *Date Shipped:* 10/31/2007    *Ship Via:* UPS Atlanta Sort Zone3 | | | | | (Taxable) |
| 2 | 7170700 | Expert DC Intraoral X-Ray New'07 ea | 1 EA | 1 | A | 4,290.00 | 4,290.00 |
| | | *Invoice:* 9904447-1    *Date Shipped:* 10/31/2007    *Ship Via:* UPS Atlanta Sort Zone3 | | | | | (Taxable) |
| 3 | 3934706 | Hydraul.Base Exm Chr.w/HR No Recl ea | 1 EA | 1 | A | 910.00 | 910.00 |
| | | *Invoice:* 9904447-1    *Date Shipped:* 10/31/2007    *Ship Via:* UPS Atlanta Sort Zone3 | | | | | (Taxable) |
| 4 | 2122467 | RO4 OPERATORS STOOL  ea | 5 EA | 5 | A | 513.00 | 2,565.00 |
| | | *Invoice:* 9904447-1    *Date Shipped:* 10/31/2007    *Ship Via:* UPS Atlanta Sort Zone3 | | | | | (Taxable) |
| 5 | 2126401 | RA2 Ass't Stool  Ea | 3 EA | 3 | A | 459.00 | 1,377.00 |
| | | *Invoice:* 9904447-1    *Date Shipped:* 10/31/2007    *Ship Via:* UPS Atlanta Sort Zone3 | | | | | (Taxable) |
| 6 | 6305120 | Ceiling Mount Dentl Light  ea | 3 EA | 3 | A | 1,881.00 | 5,643.00 |
| | | *Invoice:* 9904447-1    *Date Shipped:* 10/31/2007    *Ship Via:* UPS Atlanta Sort Zone3 | | | | | (Taxable) |
| 7 | 5533465 | MXR-1 Flushmount Flowmetr  ea | 3 EA | 3 | A | 3,519.00 | 10,557.00 |
| | | *Invoice:* 9904447-1    *Date Shipped:* 10/31/2007    *Ship Via:* UPS Atlanta Sort Zone3 | | | | | (Taxable) |
| 8 | 1709403 | Manifold Sys., 2 +2 Tanks 3222cx Ea | 1 EA | 1 | A | 2,865.00 | 2,865.00 |
| | | *Invoice:* 9904447-1    *Date Shipped:* 10/31/2007    *Ship Via:* UPS Atlanta Sort Zone3 | | | | | (Taxable) |
| 9 | 3869830 | M11 Ultraclave w/Quiet Door  Ea | 1 EA | 1 | A | 4,982.00 | 4,982.00 |
| | | *Invoice:* 9904447-1    *Date Shipped:* 10/31/2007    *Ship Via:* UPS Atlanta Sort Zone3 | | | | | (Taxable) |
| 10 | 6424083 | Panel Mount Auto Control  Ea | 5 EA | 5 | A | 577.00 | 2,885.00 |
| | | *Invoice:* 9904447-1    *Date Shipped:* 10/31/2007    *Ship Via:* UPS Atlanta Sort Zone3 | | | | | (Taxable) |
| 11 | 6423560 | Util Ctr W/o Housng&cover 8322 Ea | 5 EA | 5 | A | 195.00 | 975.00 |
| | | *Invoice:* 9904447-1    *Date Shipped:* 10/31/2007    *Ship Via:* UPS Atlanta Sort Zone3 | | | | | (Taxable) |
| 12 | 6423946 | Deluxe Central Vac Pkg. 5405 Ea | 5 EA | 5 | A | 198.00 | 990.00 |
| | | *Invoice:* 9904447-1    *Date Shipped:* 10/31/2007    *Ship Via:* UPS Atlanta Sort Zone3 | | | | | (Taxable) |
| 13 | 6426204 | ISO-C ECONO FO SYSTM-GRAY 6-Pin ea | 3 EA | 3 | A | 126.00 | 378.00 |
| | | *Invoice:* 9904447-1    *Date Shipped:* 10/31/2007    *Ship Via:* UPS Atlanta Sort Zone3 | | | | | (Taxable) |
| 14 | 1303859 | Vital Signs III W/Printer  Ea | 1 EA | 1 | A | 1,975.00 | 1,975.00 |
| | | *Invoice:* 9904447-1    *Date Shipped:* 10/31/2007    *Ship Via:* UPS Atlanta Sort Zone3 | | | | | (Taxable) |
| 15 | 5660874 | Mobile Stand W/Access Pkg  ea | 1 EA | 1 | A | 362.00 | 362.00 |
| | | *Invoice:* 9904447-1    *Date Shipped:* 10/31/2007    *Ship Via:* UPS Atlanta Sort Zone3 | | | | | (Taxable) |



Page: 2

## ORDER  RE-PRINT

| Bill To: ▉▉▉ | Ship To: ▉▉▉ | Order#: ▉▉▉ | Date: 10/31/2007 |
|---|---|---|---|
| Bibbs, Lona | Bibbs, Lona | Reference#: ▉▉▉ | |
| CFD | | | |
| 113 E 9th St | 1741 Newnan Crossing Blvd | Customer PO#: ▉▉▉ | |
| | Ste I | | |
| Gibson City        IL | Newnan          GA | Contact Name: | |
| 609361462 | 302658036 | | |

| Line No. | Product Code | Description | Quantity Order | Ship | S T | Unit Price | Extended Price |
|---|---|---|---|---|---|---|---|
| 16 | 5641590 | CP3 Contrl Panl,1Vac/1Air  ea | 1 EA | 1 | A | .00 | .00 |
| | | *Invoice:* 9904447-1      *Date Shipped:* 10/31/2007      *Ship Via:* UPS Atlanta Sort Zone3 | | | | | |
| 17 | 5642146 | Water Bypass Syst, 3/4 in Matrx ea | 1 EA | 1 | A | .00 | .00 |
| | | *Invoice:* 9904447-1      *Date Shipped:* 10/31/2007      *Ship Via:* UPS Atlanta Sort Zone3 | | | | | |
| 18 | 5649205 | PowerAir Oilless Comp 3-5 2.25HP 208-230V | 1 EA | 1 | A | 5,820.00 | 5,820.00 (Taxable) |
| | | *Invoice:* 9904447-1      *Date Shipped:* 10/31/2007      *Ship Via:* UPS Atlanta Sort Zone3 | | | | | |

**Sub Total:**           53,179.00

| Discount: .00 | Tax: 3,722. | Ship/Hand: .00 | Spec. Chgs: .00 | Total: 56,901.53 |
|---|---|---|---|---|

### THANK YOU!

Actual price may vary from the price displayed due to discounts, shipping, and/or handling charges incurred at the time of processing.
Duplicates with products in status = "S" reflect actual invoice pricing, all other status pricing is subject to change.

EXHIBIT "B"

1.   The Loan secured by this lien was made under a United States Small Business
     Administration (SBA) nationwide program which uses tax dollars to assist small
     business owners.  If the United States is seeking to enforce this document, then under
     SBA regulations:

     a) When SBA is the holder of the Note, this document and all documents evidencing
        or securing this Loan will be construed in accordance with federal law.

     b) Secured Party or SBA may use local or state procedures for purposes such as filing
        papers, recording documents, giving notice, foreclosing liens, and other purposes.
        By using these procedures, SBA does not waive any federal immunity from local or
        state control, penalty, tax or liability.  No Debtor or Guarantor may claim or assert
        against SBA any local or state law to deny any obligation of Debtor, or defeat any
        claim of SBA with respect to this Loan.

     Any clause in this document requiring arbitration is not enforceable when SBA is the
     holder of the Note secured by this instrument.

     The Debtor shall pay all of the Secured Party's reasonable court costs incurred in any
     proceeding in any Bankruptcy proceeding filed by or against the Secured Party, which
     shall include, but shall not be limited to filing a proof of claim, actions to obtain relief of
     stay or secure adequate protection, and any adversary action in Bankruptcy.

2.   Debtor hereby grants a security interest in all of the following property of the Debtor,
     whether now owned or hereafter acquired or arising, wherever located, including without
     limitation, on the real property located at 1741 Newnan Crossing Boulevard, Suite I,
     Newnan, Georgia 30265:

     a.    All rights of the Debtor to payment for goods sold or leased, or to be sold or to be
           leased, or for services rendered, howsoever evidenced or incurred, including,
           without limitation, all accounts, instruments, chattel paper and general intangibles,
           all returned or repossessed goods and all books, records, computer tapes, programs,
           and ledger books arising therefrom or relating thereto, whether now owned or
           hereafter acquired or arising.

     b.    All inventory of Debtor, whether now owned or hereafter acquired, wherever
           located, including, without limitation, all goods of Debtor held for sale or lease or
           furnished or to be furnished under contracts of service, all goods held for display or
           demonstration, goods on lease or consignment, returned and repossessed goods, all
           raw materials, work-in-progress, finished goods and supplies used or consumed in
           Debtor's business, together with all returns, repossessions, substitutions,
           replacements, parts, additions, accessions and all documents, documents of title,

dock warrants, dock receipts, warehouse receipts, bills of lading or orders, for the delivery of all, or any portion, of the foregoing.

c.     All equipment of the Debtor, including, without limitation, all machinery, furniture, furnishings, leasehold improvements, fixtures, forklifts, dies and tools and personal property of any kind of Debtor, together with all accessories and attachments thereto, all replacements and substitutes used or useful in the Debtor's business, whether now owned or hereafter acquired or arising. Some of the foregoing are or may become fixtures affixed to the real property described herein.

d.     All of Debtor's present and future right, title and interest in and to all contracts, agreements, plans, governmental authorizations, consents, licenses, approvals, permits and other documents that concern or relate to the Land or the business of the Debtor and/or the construction of improvements on the Land.

e.     All property of Debtor left with Secured Party or in its possession now or hereafter and any balance or deposit account of Debtor and all drafts, checks and other items deposited in or with Secured Party by Debtor for collection or safekeeping, with full authority given Secured Party, upon the occurrence of any Event of Default as set forth in the various loan documents between Debtor and Secured Party, to charge any or all such indebtedness of Debtor without notice or demand against any obligation secured hereby.

f.     All general intangibles now owned or hereafter acquired by the Debtor.

g.     All products and proceeds (including insurance proceeds, pre-petition and post-petition bankruptcy proceeds) arising from or in any way relating to any or all of the collateral described above.

3.     Any clause in this document requiring arbitration is not enforceable when SBA is the holder of the Note secured by this instrument.

4.     Debtor represents and warrants the following:

a)     The Debtor is a corporation organized under the laws of the State of GEORGIA. The Debtor's mailing address is 1741 Newnan Crossing Boulevard, Suite I, Newnan, Georgia 30265 and its federal identification number is 20-8949292.

b)     "MY KIDZ DENTIST, PC" is the correct legal name of the Debtor indicated on the public record of the Debtor's jurisdiction of organization that shows the Debtor to be organized.

5.     Debtor covenants the following so long as any of the Obligations shall remain outstanding and unless Secured Party shall otherwise consent in writing:

a) The Debtor shall not merge or consolidate into, or transfer of any of the Collateral to any other Person.

b) The Debtor shall not change its name unless it has given the Secured Party thirty (30) days' prior written notice thereof and executed or authorized, at the request of the Secured Party, such additional financing statements to be filed in such jurisdictions as the Secured Party may deem necessary or desirable in its sole discretion.

c) The Debtor shall, at any time and from time to time, whether or not the Official Text of Revised Article 9, 2000 Revision, of the Uniform Commercial Code promulgated by the American Law Institute and the National Conference of Commissioners on Uniform State Laws or a version thereof ("Uniform Revised Article 9") has been adopted in any particular jurisdiction, take such steps as the Secured Party may reasonably request for the Secured Party (i) to obtain an acknowledgment, in form and substance reasonably satisfactory to the Secured Party, of any bailee having possession of any of the Collateral, stating that the bailee holds possession of such Collateral on behalf of the Secured Party, (ii) to obtain "control" of any investment property, deposit accounts, letter-of-credit rights, or electronic chattel paper (as such terms are defined by Revised Article 9 with corresponding provisions thereof defining what constitutes "control" for such items of Collateral), with any agreements establishing control to be in form and substance reasonably satisfactory to the Secured Party, and (iii) otherwise to insure the continued perfection and priority of the Secured Party's security interest in any of the Collateral and of the preservation of its rights therein, whether in anticipation of or following the effectiveness of Revised Article 9 in any jurisdiction. If the Debtor shall at any time, whether or not Uniform Revised Article 9 has been adopted in any particular jurisdiction, acquire a "commercial tort claim" (as such term is defined in Revised Article 9) [with a claim for damages in excess of $1,000,000], the Debtor, as the case may be, shall promptly notify the Secured Party thereof in writing, providing a reasonable description and summary thereof, and shall execute a supplement to this Security Agreement granting a security interest in such commercial tort claim to the Secured Party.

6.    The Debtor hereby authorizes Secured Party, its counsel or its representative, at any time and from time to time, to file without the signature of the Debtor, as permitted by law, financing statements and amendments that describe the collateral covered by such financing statements as "all assets of the Debtor", "all personal property of the Debtor" or words of similar effect, in such jurisdictions as the Agent may deem necessary or desirable in order to perfect the security interests granted by the Debtor under this Security Agreement.

7.    It is a default of the Loan if any one or more of the following events occur (an "Event of Default") under this Agreement: (a) failure of the Debtor to pay any of the Debtor's liabilities as and when due and payable, after giving effect to any applicable grace period; (b) failure of the Debtor to perform, observe, or comply with any of the provisions of this Agreement or of any of the other Loan Documents, after giving effect to any applicable grace period; (c) the occurrence of an Event of Default (as defined therein) under any of the other Loan Documents; (d) any information contained in any financial statement,

application, schedule, report, or any other document given by the Debtor or by any other person in connection with the Debtor's liabilities, with the Collateral, or in any of the Loan Documents, is not in all material respects true and accurate or the Debtor or such other person omitted to state any material fact or any fact necessary to make such information not misleading; (e) the Debtor is generally not paying debts as such debts become due; (f) the filing of any petition for relief under any provision of the Federal Bankruptcy Code or any similar state law is brought by or against the Debtor; (g) an application for the appointment of a receiver for, the making of a general assignment for the benefit of creditors by or the insolvency of, the Debtor, which is not discharged within thirty (30) days; (h) the dissolution, merger, consolidation, or reorganization of the Debtor; (i) suspension of the operation of the Debtor's present business; (j) the determination in good faith by the Secured Party that a material adverse change has occurred in the financial condition of the Debtor from the condition set forth in the most recent financial statement of the Debtor heretofore furnished to the Secured Party, or from the financial condition of the Debtor as heretofore most recently disclosed to the Secured Party in any other manner; or (k) any amendment to or termination of a financing statement naming the Debtor as debtor and the Secured Party as secured party, or any correction statement with respect thereto, is filed in any jurisdiction by any party other than the Secured Party or its counsel without the prior written consent of the Secured Party.

Acknowledgment

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]
TB

B. SEND ACKNOWLEDGMENT TO:  (Name and Address)

J. BRADFORD SIMPSON
DAVIS, PICKREN & SEYDEL
285 PEACHTREE CENTER AVE NE,
STE 2300
ATLANTA, GEORGIA  30303

```
DOC# 006425
FILED IN OFFICE
11/15/2010   03:11 PM
SEQ #: 038-2010-006425
CINDY G BROWN
CLERK OF SUPERIOR COURT
COWETA COUNTY
```

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| MY KIDZ DENTIST, PC | | | | |
| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 1741 NEWNAN CROSSING BLVD., SUITE I | NEWNAN | GA | 30265 | USA |

| 1d. TAX ID #:   SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any | |
|---|---|---|---|---|---|
| | | CORPORATION | GEORGIA | 07042690 | ☐ NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

| 2d. TAX ID #:   SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any | |
|---|---|---|---|---|---|
| | | | | | ☐ NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| LIVE OAK BANKING COMPANY | | | | |
| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 2605 IRON GATE DRIVE, SUITE 100 | WILMINGTON | NC | 28412 | USA |

4. This FINANCING STATEMENT covers the following collateral:

ALL THOSE ITEMS OF PROPERTY DESCRIBED IN SCHEDULE 1 ATTACHED HERETO AND MADE A PART HEREOF, LOCATED ON PROPERTY AT 1741 NEWNAN CROSSING BLVD., SUITE 1, NEWNAN, GEORGIA  30265.

FOR FURTHER STIPULATIONS SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

| 5. ALTERNATIVE DESIGNATION [if applicable] | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.   Attach Addendum [if applicable] | | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | | All Debtors | Debtor 1 | Debtor 2 |

8. OPTIONAL FILER REFERENCE DATA
FILE WITH GEORGIAUCCINDEXES

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 07/29/98)
FORM SHOULD BE TYPEWRITTEN OR COMPUTER GENERATED

<u>SCHEDULE 1</u>        BK:0    PG:1

DEBTOR:                    MY KIDZ DENTIST, PC

SECURED PARTY:            LIVE OAK BANKING COMPANY

DESCRIPTION OF
COLLATERAL:

All of the following property of the Debtor, whether now owned or hereafter acquired or arising, including without limitation, on the leasehold property known as 1741 Newnan Crossing Blvd., Suite I, Newnan, Georgia 30265:

1.  All rights of the Debtor to payment for goods sold or leased, or to be sold or to be leased, or for services rendered, howsoever evidenced or incurred, including, without limitation, all accounts, instruments, chattel paper and general intangibles, all returned or repossessed goods and all books, records, computer tapes, programs, and ledger books arising therefrom or relating thereto, whether now owned or hereafter acquired or arising.

2.  All inventory of Debtor, whether now owned or hereafter acquired, wherever located, including, without limitation, all goods of Debtor held for sale or lease or furnished or to be furnished under contracts of service, all goods held for display or demonstration, goods on lease or consignment, returned and repossessed goods, all raw materials, work-in-progress, finished goods and supplies used or consumed in Debtor's business, together with all returns, repossessions, substitutions, replacements, parts, additions, accessions and all documents, documents of title, dock warrants, dock receipts, warehouse receipts, bills of lading or orders, for the delivery of all, or any portion, of the foregoing.

3.  All equipment of the Debtor, including, without limitation, all machinery, furniture, furnishings, leasehold improvements, fixtures, forklifts, dies and tools and personal property of any kind of Debtor, together with all accessories and attachments thereto, all replacements and substitutes used or useful in the Debtor's business, whether now owned or hereafter acquired or arising. Some of the foregoing are or may become fixtures affixed to the real property described herein.

4.  All of Debtor's present and future right, title and interest in and to all contracts, agreements, plans, governmental authorizations, consents, licenses, approvals, permits and other documents that concern or relate to the Land or the business of the Debtor and/or the construction of improvements on the Land.

BK=0    PG=2

5.      All property of Debtor left with Secured Party or in its possession now or hereafter and any balance or deposit account of Debtor and all drafts, checks and other items deposited in or with Lender by Debtor for collection or safekeeping, with full authority given Secured Party, upon the occurrence of any Event of Default as set forth in the various loan documents between Debtor and Secured Party, to charge any or all such indebtedness of Debtor without notice or demand against any obligation secured hereby.

6.      All general intangibles now owned or hereafter acquired by the Debtor.

7.      All products and proceeds (including insurance proceeds, pre-petition and post-petition bankruptcy proceeds) arising from or in any way relating to any or all of the collateral described above.

BK:0   PG:3

EXHIBIT "A"

The Loan secured by this lien was made under a United States Small Business Administration (SBA) nationwide program which uses tax dollars to assist small business owners. If the United States is seeking to enforce this document, then under SBA regulations:

a)      When SBA is the holder of the Note, this document and all documents evidencing or securing this Loan will be construed in accordance with federal law.

b)      Secured Party or SBA may use local or state procedures for purposes such as filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using these procedures, SBA does not waive any federal immunity from local or state control, penalty, tax or liability. No Borrower or Guarantor may claim or assert against SBA any local or state law to deny any obligation of Borrower, or defeat any claim of SBA with respect to this Loan.

Any clause in this document requiring arbitration is not enforceable when SBA is the holder of the Note secured by this instrument.

The Debtor shall pay all of the Secured Party's reasonable court costs incurred in any proceeding in any Bankruptcy proceeding filed by or against the Debtor, which shall include, but shall not be limited to filing a Proof of Claim, actions to obtain Relief of Stay or secure Adequate Protection, and any adversary action in Bankruptcy.

GSCCCA eFile#: EE-000498684-000065541-038 Received:Tuesday June 25, 2013 1:33:06 PM Page 1 of 1

FILED & RECORDED
Wednesday, June 26, 2013 8:44:00 AM
File Number: 038-2013-004966
Cindy G. Brown
Coweta County Clerk of Superior Court

# UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]

B. SEND ACKNOWLEDGMENT TO:  (Name and Address)

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE # | 1b.   This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. |
|---|---|

2. ☐ **TERMINATION:**  Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. ☐ **CONTINUATION:**  Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. ☐ **ASSIGNMENT** (full or partial):  Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9.

5. **AMENDMENT (PARTY INFORMATION):**  This Amendment affects ☐ Debtor  or  ☐ Secured Party of record.  Check only one of these two boxes.

Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.

☐ CHANGE name and/or address: Please refer to the detailed instructions in regards to changing the name/address of a party.　☐ DELETE name:  Give record name to be deleted in item 6a or 6b.　☐ ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7e-7g (if applicable).

6.  CURRENT RECORD INFORMATION:

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR | | | |
| 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

7.  CHANGED (NEW) OR ADDED INFORMATION:

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR | | | |
| 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

| 7d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | ☐ NONE |

8.  AMENDMENT (COLLATERAL CHANGE): check only one box.

Describe collateral ☐ deleted  or  ☐ added,  or give entire ☐ restated collateral description,  or  describe collateral ☐ assigned.

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment).  If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor,  or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

| 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR | | | |
| 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA

**FILING OFFICE COPY** — UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV. 05/22/02)

FILED & RECORDED
Monday, October 05, 2015 8:54:29 AM
File Number: 038-2015-010835
Cindy G. Brown
Coweta County Clerk of Superior Court

## UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
Corporation Service Company    1-800-858-5294

**B. E-MAIL CONTACT AT FILER (optional)**
SPRFiling@cscinfo.com

**C. SEND ACKNOWLEDGMENT TO:  (Name and Address)**

106260081 - 374330 - 10/2/2015

Corporation Service Company
801 Adlai Stevenson Drive
Springfield, IL 62703

Filed In: Georgia
(Coweta)

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1a. INITIAL FINANCING STATEMENT FILE NUMBER**
038-2010-006425 11/15/2010

**1b.** ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record]
(or recorded) in the REAL ESTATE RECORDS
Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13

**2.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

**3.** ☐ **ASSIGNMENT (full or partial):** Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

**4.** ☑ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

**5.** ☐ **PARTY INFORMATION CHANGE:**

Check one of these two boxes:             AND   Check one of these three boxes to:

☐ This Change affects ☐ Debtor or ☐ Secured Party of record   ☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c   ☐ ADD name: Complete item 7a or 7b, and item 7c   ☐ DELETE name: Give record name to be deleted in item 6a or 6b

**6. CURRENT RECORD INFORMATION:**  Complete for Party Information Change - provide only one name (6a or 6b)

**6a. ORGANIZATION'S NAME** My Kidz Dentist, PC

OR

| 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
|  |  |  |  |

**7. CHANGED OR ADDED INFORMATION:**  Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

**7a. ORGANIZATION'S NAME**

OR

**7b. INDIVIDUAL'S SURNAME**

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S)                               SUFFIX

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
|  |  |  |  |  |

**8.** ☐ **COLLATERAL CHANGE:**  Also check one of these four boxes:  ☐ ADD collateral   ☐ DELETE collateral   ☐ RESTATE covered collateral   ☐ ASSIGN collateral

Indicate collateral:

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:**  Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

**9a. ORGANIZATION'S NAME** LIVE OAK BANKING COMPANY

OR

| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
|  |  |  |  |

**10. OPTIONAL FILER REFERENCE DATA:** Debtor:My Kidz Dentist, PC

106260081

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)

Corporation Service Company
2711 Centerville Rd, Ste. 400
Wilmington, DE 19808



**U.S. Small Business Administration**

# UNCONDITIONAL GUARANTEE

| SBA Loan # | ███████████ |
|---|---|
| SBA Loan Name | My Kidz Dentist PC |
| Guarantor | LONA BIBBS |
| Borrower | MY KIDZ DENTIST, PC |
| Lender | LIVE OAK BANKING COMPANY |
| Date | November 17ᵗʰ, 2010 |
| Note Amount | $820,000.00 |

1.  **GUARANTEE:**

    Guarantor unconditionally guarantees payment to Lender of all amounts owing under the Note. This Guarantee remains in effect until the Note is paid in full. Guarantor must pay all amounts due under the Note when Lender makes written demand upon Guarantor. Lender is not required to seek payment from any other source before demanding payment from Guarantor.

2.  **NOTE:**

    The "Note" is the promissory note dated of even date in the principal amount of EIGHT HUNDRED TWENTY THOUSAND AND NO/100 DOLLARS ($820,000.00), from Borrower to Lender. It includes any assumption, renewal, substitution, or replacement of the Note, and multiple notes under a line of credit.

3.  **DEFINITIONS:**

    "Collateral" means any property taken as security for payment of the Note or any guarantee of the Note.

    "Loan" means the loan evidenced by the Note.

    "Loan Documents" means the documents related to the Loan signed by Borrower, Guarantor or any other guarantor, or anyone who pledges Collateral.

    "SBA" means the Small Business Administration, an Agency of the United States of America.

4.      LENDER'S GENERAL POWERS:

Lender may take any of the following actions at any time, without notice, without Guarantor's consent, and without making demand upon Guarantor:

A. Modify the terms of the Note or any other Loan Document except to increase the amounts due under the Note;
B. Refrain from taking any action on the Note, the Collateral, or any guarantee;
C. Release any Borrower or any guarantor of the Note;
D. Compromise or settle with the Borrower or any guarantor of the Note;
E. Substitute or release any of the Collateral, whether or not Lender receives anything in return;
F. Foreclose upon or otherwise obtain, and dispose of, any Collateral at public or private sale, with or without advertisement;
G. Bid or buy at any sale of Collateral by Lender or any other lienholder, at any price Lender chooses; and
H. Exercise any rights it has, including those in the Note and other Documents.

These actions will not release or reduce the obligations of Guarantor or create any rights or claims against Lender.

5.      FEDERAL LAW:

When SBA is the holder, the Note and this Guarantee will be construed and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Guarantee, Guarantor may not claim or assert any local or state law against SBA to deny any obligation, defeat any claim of SBA, or preempt federal law.

6.      RIGHTS, NOTICES, AND DEFENSES THAT GUARANTOR WAIVES:

To the extent permitted by law,

A. Guarantor waives all rights to:

1)    Require presentment, protest, or demand upon Borrower;
2)    Redeem any Collateral before or after Lender disposes of it;
3)    Have any disposition of Collateral advertised; and
4)    Require a valuation of Collateral before or after Lender disposes of it.

B. Guarantor waives any notice of:

1)    Any default under the Note;
2)    Presentment, dishonor, protest, or demand;
3)    Execution of the Note;
4)    Any action or inaction on the Note or Collateral, such as disbursements, payment, nonpayment, acceleration, intent to accelerate, assignment, collection activity, and incurring enforcement expenses;
5)    Any change in the financial condition or business operations of Borrower or any guarantor;
6)    Any changes in the terms of the Note or other Loan Documents, except increases in the amounts due under the Note; and
7)    The time or place of any sale or other disposition of Collateral.

C. Guarantor waives defenses based upon any claim that:

1)    Lender failed to obtain any guarantee;
2)    Lender failed to obtain, perfect, or maintain a security interest in any property offered or taken as Collateral;
3)    Lender or others improperly valued or inspected the Collateral;
4)    The Collateral changed in value or was neglected, lost, destroyed, or underinsured;
5)    Lender impaired the Collateral;
6)    Lender did not dispose of any of the Collateral;

7) Lender did not conduct a commercially reasonable sale;
8) Lender did not obtain the fair market value of the Collateral;
9) Lender did not make or perfect a claim upon the death or disability of Borrower or any guarantor of the Note;
10) The financial condition of Borrower or any guarantor was overstated or has adversely changed;
11) Lender made errors or omissions in Loan Documents or administration of the Loan;
12) Lender did not seek payment from the Borrower, any other guarantors, or any Collateral before demanding payment from Guarantor;
13) Lender impaired Guarantor's suretyship rights;
14) Lender modified the Note terms, other than to increase amounts due under the Note. If Lender modifies the Note to increase the amounts due under the Note without Guarantor's consent, Guarantor will not be liable for the increased amounts and related interest and expenses, but remains liable for all other amounts;
15) Borrower has avoided liability on the Note; or
16) Lender has taken an action allowed under the Note, this Guarantee, or other Loan Documents.

7.    DUTIES AS TO COLLATERAL:

Guarantor will preserve the Collateral pledged by Guarantor to secure this Guarantee. Lender has no duty to preserve or dispose of any Collateral.

8.    SUCCESSORS AND ASSIGNS:

Under this Guarantee, Guarantor includes heirs and successors, and Lender includes its successors and assigns.

9.    GENERAL PROVISIONS:

A.    ENFORCEMENT EXPENSES. Guarantor promises to pay all expenses Lender incurs to enforce this Guarantee, including, but not limited to, attorney's fees and costs.

B.    SBA NOT A CO-GUARANTOR. Guarantor's liability will continue even if SBA pays Lender. SBA is not a co-guarantor with Guarantor. Guarantor has no right of contribution from SBA.

C.    SUBROGATION RIGHTS. Guarantor has no subrogation rights as to the Note or the Collateral until the Note is paid in full.

D.    JOINT AND SEVERAL LIABILITY. All individuals and entities signing as Guarantor are jointly and severally liable.

E.    DOCUMENT SIGNING. Guarantor must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.

F.    FINANCIAL STATEMENTS. Guarantor must give Lender financial statements as Lender requires.

G.    LENDER'S RIGHTS CUMULATIVE, NOT WAIVED. Lender may exercise any of its rights separately or together, as many times as it chooses. Lender may delay or forgo enforcing any of its rights without losing or impairing any of them.

H.    ORAL STATEMENTS NOT BINDING. Guarantor may not use oral statement to contradict or alter the written terms of the Note or this Guarantee, or to raise a defense to this Guarantee.

I.    SEVERABILITY. If any part of this Guarantee is found to be unenforceable, all other parts will remain in effect.

J.    CONSIDERATION. The consideration for this Guarantee is the Loan or any accommodation by Lender as to the Loan.

10.    STATE-SPECIFIC PROVISIONS:

The Guarantor hereby waives the right to require the Holder of the obligations hereby guaranteed to take action against the Debtor as provided for in O.C.G.A. § 10-7-24.

11.    GUARANTOR ACKNOWLEDGEMENT OF TERMS:

Guarantor acknowledges that Guarantor has read and understands the significance of all terms of the Note and this Guarantee, including all waivers.

12.    GUARANTOR NAME(S) AND SIGNATURE(S):

By signing below, each individual or entity becomes obligated as Guarantor under this Guarantee.

IN WITNESS WHEREOF, LONA BIBBS has executed this Guaranty under seal as of the 17th day of November, 2010.

GUARANTOR:

(SEAL)

LONA BIBBS